Filed 8/3/26  Sunset Beach and Marina v. Capitol Specialty Ins. Corp. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| SUNSET BEACH AND MARINA, LLC, | |
| Plaintiff and Appellant, | G064756 |
| v. | (Super. Ct. No. 30-2022-01277306) |
| CAPITOL SPECIALTY INSURANCE CORPORATION, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila Recio, Judge. Affirmed.

Law Office of Dale E. Washington and Dale E. Washington for Plaintiff and Appellant.

Musick, Peeler & Garrett, Cheryl A. Orr and Stephen L. Cope for Defendant and Respondent.

*　　*　　*

In 2013, plaintiff Sunset Beach and Marina, LLC (Sunset) entered into a written contract with CD&G, a general contractor, to construct two new condominium units on vacant land owned by Sunset (2013 Construction Contract). The 2013 Construction Contract obligated CD&G to include Sunset as an additional insured on CD&G's liability insurance. Upon completion of the construction in 2016, Sunset sold one of the new condominium units to an individual named Catherine Bierschbach. Bierschbach later sued Sunset, CD&G, and Dan O'Neil dba O'Neil Construction Company (O'Neil), alleging numerous construction defects that resulted in, among other things, water intrusion in her unit (Bierschbach Litigation).[1] CD&G and Sunset tendered the defense of the Bierschbach Litigation to defendant Capitol Specialty Insurance Corporation (CSIC), which had issued a general commercial liability policy to CD&G in 2016 and renewed it in 2017 (collectively, the policies).[2] CSIC denied both claims. As to Sunset, CSIC concluded (1) Sunset did not qualify as an additional insured under the policies, and even if it did, (2) the Bierschbach Litigation asserted defects relating to *new* condominium construction, which was expressly excluded from coverage under the policies. This coverage litigation by Sunset against CSIC followed.

---

[1] *Bierschbach v. Sunset Beach and Marina, LLC, et al.*, Orange County Superior Court case No. 30-2017-00926762.

[2] Prior to 2016, CD&G was insured by a different carrier.

In this action, Sunset alleges CSIC owed it a duty to defend the Bierschbach Litigation as an additional insured under the policies CSIC issued to CD&G, breached that duty, and acted in bad faith in investigating whether there was potential for coverage. Sunset also alleges a direct action under Insurance Code section 11580 against CSIC as a judgment creditor of CD&G.[3]

The trial court granted CSIC's unopposed motion for summary judgment, finding CSIC met its burden of showing Sunset did not qualify as an additional insured under the policies and the policies expressly excluded the work CD&G performed for Sunset that was the subject of the Bierschbach Litigation. The court denied Sunset's cross-motion for summary adjudication on the issue of CSIC's duty to defend and entered judgment against Sunset.

Sunset appeals the judgment on the grounds (1) the trial court abused its discretion under Code of Civil Procedure section 473, subdivision (b),[4] by denying Sunset's request to continue the hearing on CSIC's motion for summary judgment; (2) the court erred in interpreting the policies; and (3) a triable issue of material fact exists as to whether there was a mistake in the issuance of the policies relating to the endorsement for new condominium construction, allowing for reformation. We affirm.

---

[3] CD&G is not a party to the underlying litigation or this appeal. Sunset sued CD&G in the Bierschbach Litigation for indemnity and obtained a default judgment against it in the amount of $2,043,404. "In appropriate cases, Insurance Code section 11580 enables a judgment creditor to bring a direct action against the judgment debtor's insurer to satisfy the judgment out of policy proceeds." (*Hearn Pacific Corp. v. Second Generation Roofing, Inc.* (2016) 247 Cal.App.4th 117, 140.)

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

I.

THE PLEADINGS

Sunset initiated the underlying action on August 24, 2022, against CSIC and R.E. Chaix & Associates Insurance Brokers, Inc. (Chaix), the surplus lines broker that placed CD&G's insurance with CSIC.[5] Sunset's operative complaint is the second amended complaint filed November 22, 2022, as amended by stipulation and order with respect to an aspect of the prayer for relief (SAC). The SAC alleges four causes of action against CSIC, including declaratory relief, breach of contract, insurance bad faith, and direct action for recovery of judgment under Insurance Code section 11580. The claims for declaratory relief, breach of contract, and insurance bad faith all arise from Sunset's claim that it is an additional insured under the policies. The direct action under Insurance Code section 11580 arises from Sunset's allegation it obtained a judgment against CD&G for amounts that were covered by insurance and it therefore has a direct claim against CSIC "independent of being an additional insured." CSIC answered the SAC on December 22, 2022.

II.

CROSS-MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION

On December 26, 2023, Sunset moved for summary adjudication of two issues: (1) CSIC owed Sunset a duty to defend the Bierschbach Litigation at the time it denied Sunset's tender of that claim, and (2) CSIC conducted an unreasonable investigation of its duty to defend as a matter of

_____

[5] A surplus lines insurer is a nonadmitted carrier, i.e., one not licensed by the State of California. Sunset settled with Chaix, which was then dismissed from the action.

4

law. CSIC opposed the motion. Sunset did not file a timely reply to CSIC's opposition.

On February 16, 2024, CSIC moved for summary judgment or, in the alternative, summary adjudication on the grounds the undisputed facts show Sunset was not an insured, additional insured, or assignee under the policies and the policies provided no coverage for the Bierschbach Litigation. When Sunset did not file an opposition to CSIC's motion, CSIC filed and served a notice of nonopposition on June 21, 2024.

On June 24, 2024, Sunset filed an untimely reply in support of its own motion for summary adjudication. At the same time, Sunset also filed a declaration from Sunset's counsel stating he had miscalendared the deadline for filing Sunset's opposition to CSIC's motion and requesting a brief continuance of the hearing to allow Sunset time to file an opposition. Sunset's counsel noted in his declaration there was no date available on the court's calendar that would allow him to appear ex parte to seek this relief before the date of the hearing on the cross-motions. Sunset filed a written objection to CSIC's late-filed reply and declaration on June 26, 2024.

The trial court heard the parties' cross-motions on June 28, 2024. Prior to the hearing, the court issued a tentative ruling granting CSIC's motion and denying Sunset's motion. Sunset's counsel alerted the court at the hearing to the declaration he had filed on June 24 and verbally requested a continuance of the hearing pursuant to section 473 based on his calendaring error. CSIC opposed any continuance of the hearing. The court indicated it was not previously aware of and had not reviewed the declaration filed on July 24 and asked Sunset's attorney for an offer of proof regarding what would be in an opposition to CSIC's motion if it were granted a continuance to file one. Sunset's counsel acknowledged the opposition would make

5

arguments similar to those already set forth in Sunset's own motion for summary adjudication. The court denied Sunset's "oral request to continue, whether it is based on sections 473 or 437[c](h) of the Code of Civil Procedure," granted CSIC's motion, and denied Sunset's motion. Judgment was entered against Sunset on August 15, 2024.

Sunset timely appealed.

## DISCUSSION

### I.

### SUNSET FAILED TO SHOW PREJUDICIAL ERROR FROM THE DENIAL OF ITS REQUEST FOR A CONTINUANCE TO OPPOSE CSIC'S MOTION

Before reaching the merits of the parties' cross-motions, we consider whether the trial court abused its discretion by denying Sunset's request for a continuance of the hearing to allow Sunset to file an opposition to CSIC's motion and by not considering the declaration that had been filed by Sunset's counsel. Sunset contends the continuance should have been granted under section 473, subdivision (b), because Sunset's counsel "admitted fault" in a sworn declaration and was not able to seek ex parte relief before the hearing because the department was dark.[6] Sunset contends the requested continuance was only for two weeks, CSIC would not have been prejudiced by a brief continuance, and the trial court did not consider the

---

[6] As noted above, the trial court order denying the continuance also referenced section 437c, subdivision (h), which mandates a continuance of a summary judgment motion to allow for additional discovery when "it appears from the affidavits submitted in opposition to [the motion] that facts essential to justify opposition may exist but cannot, for reasons stated, be presented." (*Ibid.*) Sunset, however, only argues on appeal that it was entitled to a continuance pursuant to section 473, subdivision (b). We therefore do not address section 437c, subdivision (h).

6

declaration of Sunset's counsel attesting to his fault in missing the deadline to file Sunset's opposition. We find no abuse of discretion.

Section 473, subdivision (b) provides in relevant part that "[t]he court may, upon any terms as may be just, relieve a party or the party's legal representative from a judgment, dismissal, order, or other proceeding taken against the party through the party's mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken."[7] (§ 473, subd. (b).) Relief under this portion of the statute lies within the court's discretion. (*Henderson v. Pacific Gas & Electric Co., supra*, 187 Cal.App.4th at pp. 219, 224–225.) "[A]n attorney's failure to meet a procedural deadline is a proper subject of section 473 relief." (*Id.* at p. 229.) The trial court's ruling on a discretionary motion for relief under section 473, subdivision (b) is reviewed for abuse of discretion. (*Id.* at p. 219.)

Irrespective of whether a continuance is mandatory or discretionary, an order denying such request is reversible *only* if "it is tantamount to the denial of a fair hearing" and "the burden to demonstrate

---

[7] Section 473, subdivision (b) also contains a mandatory provision that requires a court to provide relief when the attorney provides a "sworn affidavit attesting to the attorney's mistake, inadvertence, surprise, or neglect . . . ." But that mandatory relief is "only available for defaults, default judgments, and dismissals." (*Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 438.) It does not apply to "mistakes an attorney makes in opposing, or not opposing, a summary judgment motion (or not timely requesting a continuance of a hearing on a summary judgment motion)." (*Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, 228.) Thus, only the discretionary relief provided for in section 473, subdivision (b) is applicable here.

prejudice is on the appellant." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 528; see *id.* at p. 527; § 475 ["No judgment . . . shall be reversed or affected by reason of any error . . . unless it shall appear from the record that such error . . . was prejudicial, and also that by reason of such error . . . the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed"].)

Even if we were to conclude the trial court abused its discretion by failing to consider the declaration filed by Sunset's counsel and by denying the requested brief continuance, Sunset has failed to show it was denied a fair hearing on CSIC's motion. To the contrary, as Sunset's counsel acknowledged at the hearing, Sunset's own motion for summary adjudication—which the trial court considered jointly when ruling on CSIC's motion—was the flip side of the coin and contained the same or similar information that Sunset would have included in any opposition to CSIC's motion. Sunset failed to show what additional evidence or argument it would have presented, had it obtained a continuance, that would have changed the outcome, and considering the issues and evidence before the court on the cross-motions, we see none. Sunset therefore has failed to show grounds for reversal.

II.

THE TRIAL COURT PROPERLY GRANTED SUMMARY JUDGMENT TO CSIC

Sunset contends the trial court erred in granting summary judgment to CSIC because (1) it misinterpreted language in the endorsement regarding who qualifies as an additional insured, (2) the policies provided the potential for coverage for the Bierschbach Litigation, (3) the trial court misinterpreted aspects of the policies relating to coverage, and (4) factual

8

issues prevented entry of summary judgment as to CSIC's duty to investigate potential coverage and grounds for reformation based on mistake in providing the coverage requested by CD&G.[8] We reject all of Sunset's contentions.

*A. SAC Allegations*

We begin by summarizing the allegations of the SAC, which frame the issues for summary judgment. (*Feltham v. Universal Protection Service, LP* (2022) 76 Cal.App.5th 1062, 1068.)

Sunset characterizes the gravamen of its action as involving the duty to defend. Sunset alleges it contracted with CD&G for "ground up [i.e., new] construction" of the condominium units.[9] Bierschbach purchased her unit in April 2016, and construction of her unit was completed in October 2016.

Prior to February 2016, CD&G was insured by Colony Insurance Co. Approximately two months before completion of the construction, however, CD&G switched coverage to CSIC. The policies consist of Policy No. CT20160924-01, which covered the policy period February 22, 2016, to February 22, 2017 (the 2016 Policy), and renewal Policy No. CT20160924-02, which covered the period February 22, 2017, to February 22, 2018 (the 2017 Renewal).[10]

---

[8] Sunset's appellate briefing is confusing in many respects, so we have done our best to distill the arguments to the key issues Sunset is raising.

[9] The principal of CD&G, Jack Hall, who signed the 2013 Construction Contract for both parties, was also a member of Sunset.

[10] As noted, we refer to the 2016 Policy and 2017 Renewal collectively as the policies.

Bierschbach filed the Bierschbach Litigation against Sunset and CD&G on June 19, 2017. Sunset alleges in the SAC that there was a potential for coverage under the policies and both CD&G and Sunset promptly tendered the claim to CSIC.

CSIC denied coverage as to both CD&G and Sunset on August 11, 2017. Sunset contends it is an additional insured under both policies, and that it suffered damages because it had to defend against Bierschbach's claim[11] and then sue CD&G for indemnity.

*B. Standard of Review and Governing Principles of Insurance Law*

We review all questions regarding the scope of insurance coverage de novo. (*Yahoo Inc. v. National Union Fire Ins. Co. etc.* (2022) 14 Cal.5th 58, 67.) In reviewing an order granting summary judgment, we review the evidence in the light most favorable to the nonmoving party (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618), and "decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Luebke v. Automobile Club of Southern California* (2020) 59 Cal.App.5th 694, 703.)

The standards applicable to the interpretation of an insurance policy were explained by the Supreme Court in *Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115:

"'[I]nterpretation of an insurance policy is a question of law.' [Citation.] 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' [Citation.] Thus, 'the mutual intention of the parties at the time the contract is formed governs interpretation.' [Citation.] If possible, we infer this intent

---

[11] Sunset settled the Bierschbach Litigation with Bierschbach.

10

solely from the written provisions of the insurance policy. [Citation.] If the policy language 'is clear and explicit, it governs.' [Citation.] [¶] When interpreting a policy provision, we must give its terms their "'ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage.'" [Citation.] We must also interpret these terms 'in context' [citation], and give effect 'to every part' of the policy with 'each clause helping to interpret the other.' [Citations.] [¶] A policy provision is ambiguous *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole. [Citation.] The court may then 'invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage.'"

A fundamental tenet of insurance law "'is the principle that the duty to defend is broader than the duty to indemnify . . . .'" (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295; see *id.* at p. 299.) An insurer must defend any action that asserts a claim *potentially* seeking damages within the coverage of the policy. (*Id.* at p. 295.) "[T]he insured need only show that the underlying claim *may* fall within policy coverage." (*Id.* at p. 300.)

"When additional insured endorsements, by their own terms, depend on the existence of a written contract between the named insured and the additional insured, the contract is a significant circumstance in determining the objectively reasonable expectations of the additional insured. This is true whether or not the insurer ever actually read the contract." (*St. Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co.* (2003) 111 Cal.App.4th 1234, 1245.)

*C. The 2013 Construction Contract*

The 2013 Construction Contract was dated as of June 25, 2013, and was signed by CD&G and Sunset on June 27, 2013.[12] Sunset was identified as both the "Owner" and CD&G's client. Pursuant to the 2013 Construction Contract, CD&G agreed to indemnify Sunset and warranted its work would be free from defects. Section 14.2.1 required CD&G to name both Sunset and Sunset's lender as additional insureds on CD&G's liability insurance. Sunset agreed general liability insurance is "at owner's expense."

*D. The Policies*

The application for insurance that CD&G provided to CSIC for the issuance of the 2016 Policy stated, with respect to its primary operations, that it is a "general contractor that does residential and commercial remodeling and some spec new construction-SFR's and condos. 50% is subbed out." (Some capitalization omitted.) The application requested a "Blanket Additional Insured Endorsement" (some capitalization omitted), but it did not identify Sunset or any other party as a requested additional insured. In response, CSIC issued the 2016 Policy.

On or about April 18, 2016, CD&G's insurance broker, Zee Best, noticed the 2016 Policy included an exclusion for new condominium construction (CC 01 019 11 13), which was entitled "Condominium, Cooperative, Townhouse, Multifamily Dwelling, Apartment Projects Exclusion" (some capitalization omitted) (the 019 Endorsement).[13] When Zee

---

[12] Hall signed on behalf of both Sunset and CD&G.

[13] The 019 Endorsement excluded from coverage "any claim, 'suit', 'bodily injury', 'property damage' or 'personal injury' arising out of or resulting in whole or in part from any work or operations performed by you or any contractors or subcontractors working directly or indirectly on your

Best brought the error to CSIC's attention, CSIC agreed to remove exclusion CC 01 019 11 13 from the 2016 Policy and substitute it with exclusion CC 01 161 11 13 (the 161 Endorsement) for no additional premium pursuant to Policy Changes Endorsement 001. The new 161 Endorsement in the 2016 Policy excluded from coverage "any 'occurrence', 'bodily injury', 'property damage', 'personal and advertising injury', incident or 'suits' arising out of, resulting from, caused by or in any way related to any new construction operations, including but not limited to construction or demolition operations performed by you or any contractors or subcontractors working directly or indirectly on your behalf in connection with any condominium, cooperative, or townhouse project including common areas," but it carved out from the exclusion "any interior repair, maintenance or remodeling operations *for which the project contract is with the individual unit owner*." (Italics added.)

Before CSIC issued the new 161 Endorsement to the 2016 Policy, Zee Best confirmed in an email to CSIC's agent that "remodel/repair coverage is ok." However, during the course of renewing the policy for 2017, Zee Best noted the 2017 Renewal erroneously included the old 019 Endorsement, and it again asked that it be removed. CSIC responded by changing the 2017 Renewal to add the 161 Endorsement and delete the 019 Endorsement. On July 18, 2017, Zee Best wrote to Chaix: "This is still wrong. The endorsement # CC011611113 is correct as on the prior policy. However, endorsement # CC011611113 New construction exclusion was not. This one needs to be deleted. It was our intent to cover new constructions of condos."

As to who is covered under the policies, CD&G is listed as the insured. Each of the policies included two separate endorsements identifying

behalf arising out of any project involving any condominium, cooperative, townhouse, multifamily dwelling, or apartment."

additional insureds. The schedule for the first endorsement modified the "Commercial General Liability Coverage Part" (some capitalization omitted) of the policy, and was entitled "Additional Insured—Owners, Lessees or Contractors—Scheduled Person or Organization" (some capitalization omitted). The schedule for the second endorsement modified the "Commercial General Liability Coverage Part Products/Completed Operations Liability Coverage Part" (some capitalization omitted) (completed operations coverage), and was entitled "Additional Insured—Owners, Lessees or Contractors—Completed Operations" (some capitalization omitted).

Under "Name of Additional Insured Person(s) or Organization(s)" (boldface omitted), both endorsements state: "Any person or organization when you have agreed in writing in a contract or agreement that such person or organization be added as an Additional Insured," and the second endorsement for completed operations coverage adds "for Completed Operations Coverage."

Section "A" of the endorsements amends "Section II—Who Is An Insured" of the policy to include, as an additional insured, the person or organization listed in the schedule, but only with respect to certain enumerated types of liability caused by CD&G "*at the location(s) designated*" in the schedule. Under "Location(s) of Covered Operations," on the first endorsement and "Location and Description of Completed Operations" in the second endorsement, the endorsements state: "As required by written contract that is *executed on or after the policy inception.*" (Boldface omitted and italics added.)

E. The Bierschbach Litigation

On June 19, 2017, Bierschbach sued Sunset, CD&G, and O'Neil, contending her condominium unit included numerous construction defects,

14

resulting in water intrusion, water damage, mold, and other property damage.[14] Bierschbach alleged claims against Sunset for breach of written contract, negligence, breach of express warranty, intentional misrepresentation, and concealment.

*F. Sunset Does Not Qualify as an Additional Insured Under the Policies*

First, we address Sunset's contention that it qualifies as an additional insured under the policies. We agree with the trial court's conclusion that CSIC met its initial burden on summary judgment of showing Sunset was not an additional insured under the policies.

Under the policies, CSIC's duty to defend extends to "the insured." Both policies contain the same two additional insured endorsements. Both endorsements contain the same key language in their respective schedules that specifically limits their application to: "Any person or organization when you have agreed in writing in a contract or agreement that such person or organization be added as an Additional Insured." The endorsements' schedules further provide that the additional insured coverage only applies to locations "[a]s required by written contract that is executed on or after the policy inception." There was no evidence of any contract before the trial court on the cross-motions that was "executed" after the inception of the policies. Rather, the only contract was the 2013 Construction Contract, which was entered into—i.e., executed—by CD&G and Sunset years *before* the 2016 Policy was issued.

Despite this clear language in the endorsements governing who is an additional insured, Sunset argues the trial court misconstrued the term

_____

[14] Bierschbach alleged O'Neil was hired by Sunset and/or CD&G "to attempt certain repairs at the Residence" but such "repair attempts were unsuccessful."

15

"executed" to mean the date on which the 2013 Construction Contract was signed, rather than the date on which it was fully performed. Put another way, Sunset argues a contract is not "executed" when it is signed, but only when all the obligations thereunder have been fully completed. Sunset relies on Civil Code section 1661, which provides: "An executed contract is one, the object of which is fully performed. All others are executory." Sunset also points out the 2013 Construction Contract contained a section entitled "Execution of Contract" which laid out the process for completing the construction, which governs the interpretation of the language in the endorsements. We disagree with Sunset's interpretation of the endorsements.

When interpreting the language of an insurance contract, we do so "according to the common and ordinary meaning of the words of the contract." (*Blasiar, Inc. v. Fireman's Fund Ins. Co.* (1999) 76 Cal.App.4th 748, 754.) In this context, the term "executed" as used in the phrase "As required by written contract that is executed on or after the policy inception" refers to the date the agreement was *signed*. There can be no reasonable dispute that when a contract is "executed" refers to the date it is signed—not when it is performed. (See *Nielsen Construction Co. v. International Iron Products* (1993) 18 Cal.App.4th 863, 869 [in interpreting the meaning of "'executed'" as used in Labor Code section 3864, which imposes indemnity on an employer for a personal injury liability only if there is a written agreement "'executed prior to the injury,'" the court held the term meant "completing, i.e., signing, the written agreement," referring to Black's Law Dictionary definitions of "'execute'" as meaning "'to sign . . . . *To perform all necessary formalities, as to make and sign a contract*'"].)

All of the causes of action in Sunset's SAC that are based on its claimed status as an additional insured under the policies therefore fail,

including its claims for declaratory relief, breach of contract, and insurance bad faith.

*G. There Was No Potential Coverage for the Bierschbach Litigation So Sunset's Direct Action as a Creditor of CD&G Fails as a Matter of Law*

Because Sunset also brings a *direct* claim against CSIC for benefits allegedly owed to CD&G pursuant to Insurance Code section 11580, subdivision (b)(2), we turn to the issue of whether CD&G had any coverage under the policies for the Bierschbach Litigation. Based on all the papers before the trial court on the cross-motions (see § 437c, subd. (c) ["summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"]), we conclude it did not and that there was insufficient evidence to create a triable issue of material fact on that issue.

The allegations in the Bierschbach Litigation related to defects in her unit, which was built by CD&G and purchased by Bierschbach new from Sunset.[15] The Bierschbach Litigation did not relate to "interior repair, maintenance or remodeling operations," for which the "project contract" was with Bierschbach—the individual unit owner. The only contract in evidence before the court on CSIC's motion pertaining to work performed on Bierschbach's unit was the 2013 Construction Contract between CD&G and

---

[15] In the papers submitted to prove up its default against CD&G in the Bierschbach Litigation, Sunset's managing member stated in a declaration that Bierschbach's claims were due to "CD&G's faulty work" as a "general contractor" as to both Bierschbach's unit and the other condominium unit on the property, that CD&G did not properly or adequately supervise and/or construct the property, and that CD&G violated its obligations under the contract.

17

Sunset for the *ground up construction* of the condominium units,[16] which was executed at a time when the property was still vacant. Therefore, the 161 Endorsement excluded coverage.

We reject Sunset's contention that summary judgment was not appropriate because there was a triable issue of material fact regarding whether there was a mistake in the issuance of the 161 Endorsement that could support reformation of the policies.[17] The email correspondence regarding the initial errors by CSIC in including the 019 Endorsement and the replacement of that endorsement with the 161 Endorsement do not create a triable issue. The evidence shows Zee Best, acting as Sunset's agent,

---

[16] We reject Sunset's suggestion that the phrase "project contract" in the 161 Endorsement as it pertains to the existence of a contract with the individual unit owner is ambiguous. The fact that the phrase is undefined does not alone make it ambiguous. (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 866.) Common sense mandates that, in the context of the policy, a "project contract" "with the individual unit owner" means a contract between CD&G, the insured under the policies, and the person who owns the unit.

[17] As Sunset explains in its opening brief, an insurance policy may be reformed "where, by reason of fraud, inequitable conduct or mutual mistake, the policy as written does not express the actual and real agreement of the parties." (*American Surety Co. v. Heise* (1955) 136 Cal.App.2d 689, 695–696; see Civ. Code, § 3399 ["When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value"].)

18

expressly *agreed* the 161 Endorsement was correctly substituted for the 019 Endorsement.

## III.

### THE TRIAL COURT DID NOT ERR IN DENYING SUNSET'S CROSS-MOTION FOR SUMMARY ADJUDICATION

Sunset contends the trial court erred in denying its motion for summary adjudication. We disagree. In the absence of any potential coverage under the policies, the trial court properly denied Sunset's motion, which was predicated on an alleged wrongful denial of a duty to defend and an alleged bad faith failure to investigate the claim. (See *Federal Ins. Co. v. Steadfast Ins. Co.* (2012) 209 Cal.App.4th 668, 680 ["If, as a matter of law . . . there is no potential for coverage based on the allegations in the complaint or the extrinsic facts known to the insurer, then there is no duty to defend"]; *Benavides v. State Farm General Ins. Co.* (2006) 136 Cal.App.4th 1241, 1245 ["plaintiff may not recover for the negligent handling of her claim because there is no coverage under the terms of the policy"].)

DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.

GOODING, J.

WE CONCUR:

DELANEY, ACTING P. J.

SCHWARM, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.